

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

LRO                          *271 Cadman Plaza East*
F.#2023R00598                *Brooklyn, New York 11201*

February 17, 2026

<u>By E-mail and ECF</u>

The Honorable Seth D. Eichenholtz
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Rafael Hernandez, et al.
            <u>Criminal Docket No. 26-020 (HG)</u>

Dear Judge Eichenholtz:

      The government respectfully submits this letter in advance of the defendants' arraignment on the charges in the above-captioned case.  On February 2, 2026, a grand jury in the Eastern District of New York returned an indictment charging the defendants with murder, among other crimes, for their roles in the February 26, 2021 homicide of Akil Kornegay in Queens, New York.  Specifically, the defendants are charged with: (1) narcotics conspiracy, in violation of 21 U.S.C. §§ 841 and 846; (2) possessing, brandishing and discharging a firearm during a drug trafficking crime, in violation of 18 U.S.C. § 924(c); and (3) causing the death of Akil Kornegay through use of a firearm, in violation of 18 U.S.C. § 924(j).  For these crimes, the defendants face a mandatory minimum term of 10 years' imprisonment, and a maximum term of life imprisonment.

      The defendants cannot rebut the presumption that "no condition or combination of conditions will reasonably assure the appearance of the [defendants] as required and the safety of the community."  18 U.S.C. § 3142(e)(3)(B).  Permanent orders of detention are therefore appropriate.

I.    <u>Background</u>

      Defendants Rafael Hernandez, also known as "Cap" and "Ralphy," and Joibel Perez, also known as "J.P.," and others operated a long-running, lucrative drug trafficking scheme, including out of the Taylor Street-Wythe Avenue Housing Development in Brooklyn. The defendants created a "menu" of narcotics that they distributed to customers, including the victim, Akil Kornegay:



Kornegay purchased marijuana from the defendants' crew on several occasions, including in 2020 and early 2021.

In January 2021, a dispute concerning a drug debt arose between the defendants and Kornegay. Text messages sent by Hernandez to Kornegay reflect Hernandez's demands for payment (or "bread"), and accuse Kornegay of "ducking" Hernandez and "playin[g] kid games":



The dispute escalated in early February 2021 when Kornegay and a second individual robbed the defendants, stealing narcotics and cash, among other things.

In response to the robbery, the defendants plotted violent retribution. In the early morning hours of February 26, 2021, the defendants, driving a black Infiniti sedan, stalked Kornegay across the city, departing from Perez's residence in Brooklyn and ultimately following Kornegay through a residential neighborhood in Queens. Surveillance video captured Perez as he departed his residence in Brooklyn:

 

Kornegay was behind the wheel of a car when the defendants, in the black Infiniti, pulled up next to Kornegay and fired multiple gunshots. Kornegay sustained multiple gunshot wounds and attempted to drive off, but crashed into a pole—and ultimately succumbed to his injuries.

## II.    Legal Standard

In the pre-trial context, the court "shall order" a defendant detained if it finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). The government bears the burden of establishing by a preponderance of the evidence that the defendant is a flight risk or by clear and convincing evidence that the defendant is a danger to the community. United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001).

Where, as here, a defendant is charged with discharging a firearm under 18 U.S.C. § 924(c), the defendant is presumed to pose both a danger to the community and a risk of flight, and there is a presumption that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community. 18 U.S.C. § 3142(e)(3)(B). Where a presumption of detention is applicable, the defendant bears the burden of rebutting that presumption by coming forward with evidence "that contradicts notions of flight risk or dangerousness." Mercedes, 254 F.3d at 436. Even if a defendant can meet his burden to

rebut this presumption by coming forward with evidence that he does not pose a danger to the community or a risk of flight, the presumption favoring detention "does not disappear entirely, but remains a factor to be considered among those weighed by the district court." Id.; see also United States v. Martir, 782 F.2d 1141, 1144 (2d Cir. 1986) (presumption of risk of flight); United States v. Rodriguez, 950 F.2d 85, 88 (2d Cir. 1991) (presumption of dangerousness).

The government may proceed by proffer to establish facts relevant to a detention determination. United States v. Ferranti, 66 F.3d 540, 541 (2d Cir. 1995). Furthermore, "[t]he rules of evidence do not apply in a detention hearing." Id. at 542. As the Second Circuit has explained:

> [I]n the pre-trial context, few detention hearings involve live testimony or cross examination. Most proceed on proffers. See United States v. LaFontaine, 210 F.3d 125, 131 (2d Cir. 2000). This is because bail hearings are "typically informal affairs, not substitutes for trial or discovery." United States v. Acevedo-Ramos, 755 F.2d 203, 206 (1st Cir. 1985) (Breyer, J.) (quoted approvingly in LaFontaine, 210 F.3d at 131). Indeed, § 3142(f)(2)(B) expressly states that the Federal Rules of Evidence do not apply at bail hearings; thus, courts often base detention decisions on hearsay evidence. Id.

United States v. Abuhamra, 389 F.3d 309, 320 n.7 (2d Cir. 2004).

Whether detention is sought on the basis of flight or dangerousness, the Bail Reform Act lists four factors to be considered in the detention analysis: (1) the nature and circumstances of the crimes charged, "including whether the offense is a crime of violence . . . or involves a . . . firearm"; (2) the history and characteristics of the defendant; (3) the seriousness of the danger posed by the defendant's release, including "whether, at the time of the current offense or arrest, the person was on probation [or] on parole"; and (4) the weight of the evidence against the defendant. See 18 U.S.C. § 3142(g). Specifically, in evaluating dangerousness, courts consider not only the effect of a defendant's release on the safety of identifiable individuals, such as victims and witnesses, but also "'the danger that the defendant might engage in criminal activity to the detriment of the community.'" United States v. Millan, 4 F.3d 1038, 1048 (2d Cir. 1993) (quoting legislative history).

III.    Argument

As an initial matter, the defendants are charged with murder and with discharging a firearm during a drug trafficking crime—offenses that carry a significant term of imprisonment and trigger a 10-year mandatory minimum term of incarceration. These serious charges give rise to a statutory presumption that no condition or combination of conditions will reasonably assure their appearance or the safety of the community. As set forth below, because each of the relevant factors weighs in favor of detention, the defendants cannot rebut the presumption. They should be detained pending trial.

First, the nature and circumstances of the crimes charged weigh heavily in favor of detention. The defendants are charged with extraordinarily serious crimes—including a premeditated murder—which they brazenly perpetrated on a roadway near a residential Queens neighborhood. See United States v. Watkins, 940 F.3d 152, 163 (2d Cir. 2019) ("It has long been the law of our Circuit that possession of a firearm is unequivocally a crime of violence for purposes of § 3142(f)(1)(A).").  As a general matter, the Second Circuit has recognized that any possession of a firearm poses a serious risk of danger. See United States v. Dillard, 214 F.3d 88, 94 (2d Cir. 2000) ("The risk of violent use posed by a convicted felon's possession of firearms is significant."). And here, that risk of violence came to fruition; the defendants hunted down and murdered a former drug customer in retaliation for a robbery committed weeks earlier. See United States v. Williams, No. 20-CR-293 (WFK), 2020 WL 4719982, at *2 (E.D.N.Y. Aug. 13, 2020) (holding magistrate judge erred in releasing on bail defendant who possessed a firearm in connection with a shooting). Such predatory and violent conduct demonstrates that the defendants present an extreme danger to the community.

The history and characteristics of each defendant further weigh in favor of detention. Defendant Hernandez has multiple convictions for criminal possession of a controlled substance and, most recently, he was convicted of criminal possession of a weapon. Defendant Perez has similarly accumulated multiple arrests; he has been arrested at least three times in the past five years, and bench warrants were issued in each of those three cases. In other words, despite multiple prior arrests and convictions, the defendants have engaged in a sustained pattern of increasingly serious criminal conduct. As evidenced by this pattern and history—and by the instant offense—the defendants are undeterred by law enforcement intervention, and therefore pose an extraordinarily serious danger.

Finally, the weight of the evidence against each defendant is strong—and includes video surveillance, telephone records, cell site data, vehicle records and witness testimony, among other things. See Williams, 2020 WL 4719982, at *3 ("[S]ignificant evidence, including extensive documentation, of a defendant's role in a crime may weigh against release."). Moreover, the likelihood of a lengthy term of imprisonment gives the defendants a strong incentive to flee—and greatly minimizes any risk that pre-trial detention would result in an over-served sentence. See Williams, 2020 WL 4719982, at *2 (Guidelines range of "92 to 115 months' imprisonment" gave defendant "a strong incentive to flee"); see also, e.g., United States v. Scali, 738 F. App'x 32, 33 (2d Cir. 2018) ("The court reasonably determined that [defendant's] Guidelines range of 87-108 months' imprisonment was significant enough to provide an incentive to flee"); United States v. Blanco, 570 F. App'x 76, 77 (2d Cir. 2014) (affirming district court's order of detention because, inter alia, defendant "face[d] a mandatory minimum prison sentence of five years, a possible maximum sentence of 40 years"). Indeed, the defendants face a mandatory minimum of ten years' incarceration—and, given their criminal histories and the nature of the instant charges, the possibility of a severe sentences is real and should be an important factor in assessing a defendant's incentive to flee. See United States v. Jackson, 823 F.2d 4, 7 (2d Cir. 1987); Martir, 782 F.2d at 1147 (defendants charged with serious offenses whose maximum combined terms created potent incentives to flee).

IV.    <u>Conclusion</u>

       For the foregoing reasons, the government respectfully requests that the Court enter a permanent order of detention with respect to each defendant.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney


By:    _____/s/_____

Lindsey R. Oken
Andy Palacio
Assistant U.S. Attorneys
(718) 254-7000